IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-04-145 |
| SHAWN GILREATH, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM ORDER</u>

On May 28, 2004, Petitioner Shawn Gilreath ("Mr. Gilreath") pleaded guilty to possession of a firearm in furtherance of a crime of violence, and aiding and abetting as to the same, in violation of 18 U.S.C. § 924(c)(1)(D)(ii) and § 2. On July 15, 2005, this Court sentenced him to 144 months' imprisonment, to run consecutive to a 360-month sentence that had previously been ordered by the United States District Court for the Northern District of Georgia.[1] (ECF No. 24.) Mr. Gilreath is now fifty-one years old. He is currently incarcerated at FCI Cumberland, in Cumberland, Maryland, with a projected release date of May 2, 2035. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (search by register number: 47555-019) (last accessed May 11, 2026).

There are three motions now pending before the Court. The first is Mr. Gilreath's pro se Motion for a Reduced Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 44 *SEALED*), which he has twice supplemented (ECF Nos. 53 *SEALED*, 54 *SEALED*)

---

[1] As further explained herein, Mr. Gilreath was sentenced on June 12, 2002, in the United States District Court for the Northern District of Georgia after a jury found him guilty of armed bank robbery and kidnapping. *See Gilreath v. United States*, 96-CR-472-JTC-1, 2009 WL 10727085, at *1 (N.D. Ga. Apr. 24, 2009). He was immediately returned to the custody of the Clayton County, Georgia, jail, to await trial on state murder and armed robbery charges. *Id.* He escaped from that jail on November 18, 2003. *Id.* The crimes underlying this sentence arose out of his escape. *Id.*

1

(collectively, "Motion for Compassionate Release"). The second is his pro se Motion to Correct Criminal History Calculation Following U.S.S.G. Amendment 742 ("Amendment 742 Motion") (ECF No. 57). The third is his Motion to Correct Criminal History Calculation Following U.S.S.G. Amendment 821 (ECF No. 57), which Mr. Gilreath originally filed pro se but has now been supplemented by the Office of the Federal Public Defender for the District of Maryland (ECF No. 64) (collectively, "Amendment 821 Motion"). The Government has responded in opposition to all three Motions. (ECF No. 67.) The Court has reviewed all relevant filings; no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, Mr. Gilreath's Motion for Compassionate Release (ECF Nos. 44 *SEALED*, 53 *SEALED*, 54 *SEALED*); his Amendment 742 Motion (ECF No. 57); and his Amendment 821 Motion (ECF Nos. 57, 64) are DENIED.

## BACKGROUND

For clarity, the Court notes at the outset that the factual history in this case involves three separate prosecutions across three jurisdictions, which ultimately resulted in two separate federal prison sentences. Unless otherwise noted, the Court draws the facts herein from the stipulated facts contained in Mr. Gilreath's plea agreement in this Court. *See* (ECF No. 38-1) (setting out the stipulated facts from the plea agreement in this case).

On January 22, 1998, Mr. Gilreath was indicted for murder and armed robbery in the Superior Court of Clayton County, Georgia. *See Georgia v. Gilreath*, No. 1998-cr-0113 (Clayton County Sup. Ct.).[2] Separately, while in state custody and awaiting trial on those charges, Mr.

---

[2] After this Court sentenced Mr. Gilreath, resulting in two consecutive federal sentences that collectively totaled more than five-hundred-months' imprisonment, the State of Georgia dismissed the murder charge against him. *See Georgia v. Gilreath*, No. 1998-cr-0113 (Clayton County Sup. Ct.).

Gilreath was indicted in the United States District Court for the Northern District of Georgia for unrelated charges of armed bank robbery and kidnapping. Sometime in 1998,[3] a federal jury in the Northern District of Georgia found Mr. Gilreath guilty of the charges against him. *See Gilreath v. United States*, 96-CR-472-JTC-1, 2009 WL 10727085, at *1 (N.D. Ga. Apr. 24, 2009). After an appeal to the United States Court of Appeals for the Eleventh Circuit, Mr. Gilreath was ultimately sentenced in the Northern District of Georgia on June 26, 2002, to a term of imprisonment of 360 months (thirty years) for his federal crimes. *Id.*

After he was sentenced in federal court, Mr. Gilreath was returned to the custody of the Clayton County Jail in Jonesboro, Georgia, to await trial on his state murder and armed robbery charges. *Id.* On November 18, 2003, shortly before that trial was to begin, he and another man, Floyd Williams, escaped from the Clayton County Jail and traveled north. (ECF No. 38-1 at 2.) On Friday, December 5, 2003, the pair parked a Chevrolet van near a SunTrust bank in Baltimore County, Maryland, and immediately switched vehicles to a Jeep sport-utility vehicle. (*Id.*) Mr. Gilreath stayed in the Jeep while Mr. Williams went into the bank, handed the teller a bag and a note stating that he was robbing the bank and had a gun, and then left with roughly $1,776.00. (*Id.* at 2–3.) The pair then switched back from the Jeep to the Chevrolet van and fled. (*Id.* at 3.) The robbery and flee attempt were recorded on surveillance video, and so the Baltimore County Police pursued the Chevrolet van. (*Id.*) After a short pursuit and on-foot chase, Mr. Gilreath and Mr. Williams were seized. (*Id.*)

The police searched Mr. Gilreath and found on his person two loaded pistols, two

---

[3] It is not clear from the record when in 1998 Mr. Gilreath's federal jury trial in the Northern District of Georgia took place.

shoulder holsters, two loaded magazines. (*Id.*) Upon searching the Chevrolet van, the officers

found a shotgun and two rifles. (*Id.*) The firearms had been reported stolen in a November

24, 2003, burglary of Dances Sporting Goods in Colonial Heights, Virginia. (*Id.*) When

interviewed by police on December 5, 2003, Mr. Gilreath waived his *Miranda*[4] rights and

admitted to the bank robbery, possessing the firearms to further the bank robbery, and that

they were in Maryland after having escaped the Clayton County, Georgia jail. (*Id.*)

On March 16, 2004, Mr. Gilreath was indicted by a federal grand jury sitting in

Baltimore on three counts: (1) bank robbery by use of a dangerous weapon, in violation of 18

U.S.C. § 2113(a) and (d) (Count I); (2) possession of a firearm in furtherance of a crime of

violence, in violation of 18 U.S.C. § 924(c) (Count II); and (3) felon in possession of a firearm,

in violation of 18 U.S.C. § 922(g)(1) (Count III). (ECF No. 38-2.)

On May 28, 2004, he pleaded guilty to Count II, possession of a firearm in furtherance

of a crime of violence, with aiding and abetting as to the same, in violation of 18 U.S.C.

§ 924(c)(1)(D)(ii) and § 2. (ECF No. 38-1.) Under the plea agreement, the Government and

Mr. Gilreath agreed upon a sentence in the range of 262 to 327 months[5] of incarceration.

(ECF No. 38-1.) On June 28, 2005, this Court sentenced Mr. Gilreath to 144 months' (twelve

years') imprisonment, to run consecutive to his 360-month sentence imposed by the Northern

---

[4] In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court held that the Government may not use any statements of a criminal defendant stemming from a custodial interrogation of that defendant unless it demonstrates that "procedural safeguards" were used to "secure the privilege against self-incrimination." *Id.* Specifically, the Government must inform a person subject to custodial interrogation that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* A defendant may waive these rights, "provided the waiver is made voluntarily, knowingly[,] and intelligently." *Id.*

[5] The parties agreed that the advisory guideline range might instead have been 292 to 365 months, depending on Mr. Gilreath's ultimate criminal history category. The ultimate criminal history score of twelve resulted in a range of 262 to 327 months.

District of Georgia. (ECF No. 24.) As noted above, the State of Georgia dismissed the murder charge against Mr. Gilreath shortly after this Court's sentence resulted in a total federal imprisonment of more than five hundred months. *See* (ECF No. 38-1 (citing *Georgia v. Gilreath*, No. 1998-cr-0113 (Clayton County Sup. Ct.)).

On May 10, 2018, Mr. Gilreath filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 32.) This Court denied that Motion by Memorandum Opinion and Order. (ECF Nos. 40, 41.) On March 3, 2023, Mr. Gilreath filed the instant Motion for Compassionate Release. (ECF No. 44 *SEALED*.) Additionally, on October 15, 2024, Mr. Gilreath filed the pending Amendment 742 Motion (ECF No. 57) and Amendment 821 Motion (ECF Nos. 57.) The Office of the Federal Public Defender for the District of Maryland supplemented his Amendment 821 Motion on August 5, 2025. (ECF No. 64.) The Government filed a combined Response in Opposition to all three motions. (ECF No. 67.)

## ANALYSIS

Mr. Gilreath has filed three motions, only one of which—his Amendment 821 Motion—has been supplemented by counsel from the Office of the Federal Public Defender. His pro se pleadings will be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

### I.    Motion for Compassionate Release (ECF No. 44 *SEALED*)

Mr. Gilreath seeks early release from his 144-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 44 *SEALED*.) Ordinarily, a court "may not modify a term

of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release, as provided by Congress in § 3582(c)(1)(A), is a limited exception to that rule. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020). It permits a court to modify a sentence upon its finding that (1) a petitioner has exhausted his administrative remedies; (2) there are extraordinary and compelling reasons warranting a reduction; and (3) that such a reduction would align with any relevant sentencing factors set out in 18 U.S.C. § 3553(a) and any applicable policy statement issued by the United States Sentencing Commission.[6] *See United States v. Ferguson*, 55 F.4th 262, 267–68 (4th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)). In this case, Mr. Gilreath has not presented any extraordinary and compelling reasons warranting relief. He has likewise not shown that a sentence reduction is warranted under the factors set out in 18 U.S.C. § 3553(a). His Motion (ECF No. 44 *SEALED*) is thus DENIED.

### a. **Administrative Exhaustion**

It is well-settled that the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, provides a petitioner with the right to move for compassionate release on his own behalf so long as he satisfies certain "threshold requirement[s]." *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). First, he must request that the warden of his facility seek compassionate release on his behalf. *Id.* (citing § 3582(c)(1)(A)). Second, he can *either* wait thirty days from making that request *or* fully exhaust his administrative rights of appeal. *Id.* (quoting § 3582(c)(1)(A)). Either of these methods is sufficient because Congress provided "two

---

[6] Section 3582(c)(1)(A) also permits a court to grant relief if a prisoner (1) met the threshold requirements; (2) is at least seventy years of age; (3) has served at least thirty years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c); and (4) the Director of the Bureau of Prisons has determined that the prisoner is not a danger to the safety of the any other person or the community. *Id.* § 3582(c)(1)(A)(ii). This provision does not apply in Mr. Gilreath's case for the simple reason that he is fifty-one years old.

alternative ways to satisfy the threshold requirement." *Id.* (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021)). Mr. Gilreath requested that his warden seek compassionate release on his behalf on January 3, 2023. (ECF No. 44-1 at 3 *SEALED*.) He filed his Motion for Compassionate Release on February 7, 2023. (ECF No. 44 at 31 *SEALED*.) He has thus exhausted his administrative requirements.

### b.  **Extraordinary and Compelling Reasons**

To grant compassionate release to a prisoner, a federal court must find that there are "extraordinary and compelling reasons" warranting relief. 18 U.S.C. § 3582(c)(1)(A)(i). Congress has delegated the task of "describing what should be considered extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t). The Commission, in turn, has identified six possible circumstances that, viewed separately or together, may amount to extraordinary and compelling reasons for a sentence reduction:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the death or incapacitation of an immediate family member of the defendant;

(4) the defendant being a victim of abuse while in custody;

(5) other reasons of similar gravity as (1)–(4); and

(6) an unusually long sentence, provided that the defendant has served more than ten years and there has been a change in the relevant law.

U.S.S.G. § 1B1.13(b)(1)(6). Additionally, "courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States*

*v. Wise*, No. ELH-18-72, 2020 WL 2614816, at *6 (D. Md. May 22, 2020) (recognizing that a federal district court "retains independent discretion" beyond the Commission's commentary "to determine whether 'extraordinary and compelling reasons' warrant a sentence reduction").

In his Motion for Compassionate Release, Mr. Gilreath proffers three reasons that he contends present "extraordinary and compelling reasons" for relief: (1) the length of his collective federal incarceration, combined with the disparity between his sentence and the sentence he might have received today (ECF No. 44 *SEALED* at 17–20); (2) his serious medical conditions and mental suffering (*Id.* at 23–25, 27–30); and (3) his rehabilitation while incarcerated (*Id.* at 25–27). In Opposition, the Government contends that these reasons do not suffice to demonstrate entitlement to relief under U.S.S.G. § 1B1.13(b). (ECF No. 67.) The Court takes each of Mr. Gilreath's proposed extraordinary and compelling reasons in turn.[7]

### i. *Sentence Length and Sentencing Disparity*

Mr. Gilreath first asserts that he is entitled to compassionate release based on the total length of his collective federal sentence (more than five hundred months, or forty-one-plus years) and the disparity between his sentence and that which he would likely receive if he were sentenced today. (ECF No. 44 *SEALED* at 17–20.) Specifically, he argues that *United States v. Booker*, 543 U.S. 220 (2005), *Dean v. United States*, 581 U.S. 62 (2017), and the elimination of § 924(c) "stacking" following the passage of the First Step Act[8] represent changes in the law

---

[7] The Court evaluates Mr. Gilreath's Motion pursuant to U.S.S.G. § 1B1.13 as amended in November 2023. *See United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025) (holding that in cases such as this one "the amended policy statement does indeed apply to [the petitioner's] motion").

[8] 18 U.S.C. § 924(c) establishes the mandatory minimums for violations of that section: five-to-ten years for the first offense, dependent on the circumstances, and, for a subsequent or second conviction, a consecutive twenty-five-year mandatory minimum. Prior to the First Step Act of 2018, the Government could "stack" § 924(c) convictions by treating multiple § 924(c) counts *within the same case* as the first and "second or subsequent" convictions and thereby trigger the

that would likely result in a lower sentence if he were sentenced today. (*Id.*) The Government responds that Mr. Gilreath fails to identify any change in relevant sentencing law that would likely result in a lower sentence. (ECF No. 67 at 12.) While Mr. Gilreath does not identify any particular portion of the Sentencing Guidelines, his argument as to his sentence would appear to relate to § 1B1.13(b)(6) of the Guidelines. That subsection contemplates a sentence reduction where a defendant can demonstrate that: (1) he "received an unusually long sentence"; (2) he "has served 10 years of the term of imprisonment"; and, (3) due to the change in law, there is a "gross disparity between the sentence being served and sentence likely to be imposed at the time this motion is filed." *Id.*

Mr. Gilreath's sentence, 144 months, is not unusually long. District courts within the Fourth Circuit routinely recognize that sentences within the applicable guidelines range are not unusually long. *See, e.g.*, *United States v. Millner*, No. JKB-08-0086, 2024 WL 1678559, at *3 (D. Md. Apr. 17, 2024) (concluding that 240-month sentence was not unusually long because it fell at the low end of the applicable guidelines range); *United States v. Locust*, 771 F. Supp. 3d 819, 830 (E.D. Va. 2025) (concluding that life sentence was not unusually long despite being longer than the minimum specified in the plea offer because it was within the applicable guidelines range). Mr. Gilreath and the Government stipulated to a Guidelines range of 262-months to 327-months' imprisonment. This Court departed downwards from that range and imposed a sentence of Mr. Gilreath's 144-month sentence, approximately ten years below the low end of that range.

---

twenty-five-year mandatory minimum during one prosecution. *McCoy*, 981 F.3d at 275. The First Step Act prevents "stacking" by clarifying that the twenty-five-year mandatory minimum is triggered only where a prior § 924(c) conviction stems from a separate case and has already become final. 132 Stat. at 5222.

Moreover, Mr. Gilreath has not yet served ten years of that 144-month term. His argument, that he has a collective federal sentence of over five hundred months and that he has been incarcerated more than twenty-five years, ignores the fact that this Court's sentence is wholly separate from the sentence imposed by the Northern District of Georgia. Mr. Gilreath essentially argues that the two consecutive federal sentences should be aggregated in determining whether he has served ten years or more of his sentence. The United States Court of Appeals for the Fourth Circuit has not yet considered whether two or more consecutive federal sentences imposed in different jurisdictions together for determining whether a prisoner has served ten years or more of his term. The United States Court of Appeals for the Eighth Circuit, however, has recently held that the different federal sentences may not be aggregated for the purposes of a sentence reduction under § 1B1.13(b)(6). *United States v. Chachanko*, 162 F.4th 894, 897 (8th Cir. 2025).

In *Chachanko*, the defendant received two federal sentences—one imposed in Montana and another in South Dakota—to be served consecutively. 164 F.4th at 897. By the time he moved for compassionate release, he had been incarcerated for seventeen years, but had only recently begun serving the South Dakota sentence. *Id.* Seeking a reduction of that sentence under U.S.S.G. § 1B1.13(b)(6), he argued that his two consecutive sentences should be treated as a single, aggregated term of imprisonment for purposes of eligibility. *Id.* The Eighth Circuit rejected that argument, holding that "the term of imprisonment" for which the defendant must have served "at least 10 years" refers only to the South Dakota sentence—the same sentence he sought to reduce. *Id.* at 898; *cf. United States v. Long*, 997 F.3d 342, 348 (D.C. Cir.

10

2021) ("A[] . . . motion for compassionate release is generally filed with the judge that imposed the original sentence.").

In this case, Mr. Gilreath received a sentence of 360 months in the Northern District of Georgia and a consecutive sentence of 144 months in this District. Although Mr. Gilreath has been incarcerated for over two decades, he presently seeks a reduction of the 144-month sentence imposed by this Court, for which he has not yet served the ten years required to qualify under § 1B1.13(b)(6). In sum, Mr. Gilreath's sentence is not unusually long. He has also not served ten years of that term. He has not established an extraordinary and compelling reason warranting compassionate release based on the length of his sentence.[9]

ii. *Medical Circumstances*

Mr. Gilreath next asserts that his medical circumstances—including psoriasis, a herniated L5-S1 disc, recurring cysts, migraines, and depression—constitute extraordinary and compelling reasons for relief. (ECF No. 44 *SEALED* at 3, 8–9, 28–29.) Courts in this Circuit have consistently found that "health conditions such as depression, anxiety, and difficulty sleeping generally" are insufficient to establish extraordinary and compelling reasons for relief. *See, e.g.*, *United States v. Street*, No. 17-CR-246-1, 2025 WL 3459681, at * 11 (M.D.N.C. Dec. 2, 2025). The medical circumstances of a defendant can constitute extraordinary and compelling reasons where a defendant is "suffering from a terminal illness," U.S.S.G. § 1B1.13(b)(1)(A);

---

[9] Alternatively, Mr. Gilreath argues that the length of his sentence can be considered as an extraordinary and compelling reason without showing a change in the law. (ECF No. 44 *SEALED* at 13.) It is well-settled that the mere "duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021); *see also United States v. Washington*, 122 F.4th 264, 267 (6th Cir. 2024) ("[T]he catch-all provision [§ 1B1.13(b)(5)] is not a home for complaints that the generally applicable penalties set by Congress are too harsh."); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ([T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute.").

where medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," *id.* § 1B1.13(b)(1)(B); where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C); or where a defendant faces imminent risk of being affected by an infectious disease or an ongoing public health emergency under certain circumstances, *id.* § 1B1.13(b)(1)(D).[10] In this case, Mr. Gilreath's medical conditions are not terminal, and he does not claim that his medical circumstances substantially diminish his ability to provide self-care in a correctional facility.

Mr. Gilreath states that he suffers from psoriasis, which he describes as a "painful skin disorder" causing him "a high degree of pain all over his body," as well as a herniated disc that restricts his mobility, requires the use of a cane, and causes him pain "throughout his lower back and extremities." (ECF No. 44 *SEALED* at 8, 28–29; ECF No. 54 *SEALED* at 2.) Additionally, he claims that he experiences four to eight migraines per month and recurring cysts. (ECF No. 44 *SEALED* at 8–9, 29.) While he admits that he receives regular treatment for his conditions, he avers that "he could have better courses of treatment" if not for "his imprisonment and the restrictions imposed on particular health care by federal policies." (*Id.*

---

[10] Mr. Gilreath briefly argues that the conditions of the COVID-19 pandemic, in light of his "already compromised immune system," constitute extraordinary and compelling circumstances. (ECF No. 44 *SEALED* at 29.) He has not shown, however, that there is a higher risk that he will contract COVID-19 in prison. More to the point, that disease is longer classified as a national pandemic. *See* Pub. L. No. 118-3, 137 Stat. 6 (2023) (terminating designation of COVID-19 as a national emergency); *see also United States v. Deleon*, LKG-16-267, 2024 WL 4555724, at *9 (D. Md. Oct. 23, 2024) (finding no extraordinary or compelling reason where "the Petitioner is at no greater risk from COVID-19 than other inmates and members of the general public who have similar underlying health conditions" as COVID-19 is no longer a national pandemic).

at 28.)  Further, he contends that the treatment he receives from BOP "does not fully address[]

the limiting and debilitating totality of [his] conditions. (*Id.* at 8.)

The Bureau of Prisons is not required to provide medical care that is necessarily

equivalent to that available outside of prison. *See United States v. Purpera*, 18-cr-00019, 2024 WL

329541, at *3 (W.D. Va. Jan. 29, 2024). "[D]ispleasure with the quality of the medical

care . . . provided by BOP is not sufficient to show an extraordinary and compelling reason

for compassionate release." *United States v. Ayyad*, LKG-15-157, 2024 WL 3424083, at *21–22

(D. Md. July 15, 2024). Generally, no compassionate release is warranted for medical care

when a petitioner is provided with regular medications, appointments to provide treatment,

follow-up appointments to monitor a condition, and evaluation by outside experts. *See, e.g.,*

*United States v. Scarborough*, No. 1:12-CR-43, 2024 WL 2832711, at *3 (M.D.N.C. June 4, 2024),

*aff'd*, 2024 WL 4824236 (4th Cir. Nov. 19, 2024) (denying compassionate release after skin

cancer diagnosis where defendant had lesions removed, received ointment for affected areas,

and was scheduled for a follow-up dermatology visit); *United States v. Hunter*, No. 3:12-cr-289-

MOC, 2024 WL 3464039, at *5 (W.D.N.C. July 18, 2024), *aff'd*, 2025 WL 2506070 (4th Cir.

Sept. 2, 2025) (denying compassionate release where defendant received evaluation by a

neurologist, bloodwork testing, and medications).

In this case, Mr. Gilreath has received adequate medical care for his conditions. The

medical records which he has presented to the Court demonstrate that his conditions are

regularly monitored and treated.  *See generally* (ECF No. 54-1 *SEALED*). He notes that his

psoriasis is treated with "several medications in a regular fashion." (ECF No. 44 *SEALED*

at 28.) Further, he has also received treatment for his herniated disc from care providers

outside of BOP, including outside trips to physicians at Union Hospital Terre Haute (in Terre Haute, Indiana) and Allan MacKay Practice Bloomington (in Bloomington, Indiana). (ECF No. 54-3 at 8–13.) In addition to medical care, BOP has provided Mr. Gilreath with accommodations related to his herniated disc, including a cell on the first floor, a lower bunk bed, and a cane for walking. (*Id.* at 18.) Mr. Gilreath does not specify any additional treatment that he needs but has not received from BOP. *See generally* (ECF No. 44 *SEALED* at 3, 8–9, 28–29). Therefore, he has not established an extraordinary and compelling reason warranting compassionate release based on his asserted medical conditions.

### iii.    *Rehabilitation*

Mr. Gilreath's third proffered extraordinary and compelling reason for a sentence reduction is his rehabilitation while incarcerated. While commendable,[11] the plain text of 28 U.S.C. § 994(t) states that rehabilitation, on its own, is not sufficient to establish "extraordinary and compelling" circumstances. 28 U.S.C. § 994(t). Accordingly, as explained above, Mr. Gilreath has not established an "extraordinary and compelling" reason for relief, and he is ineligible for compassionate release.

### c.    **3553(a) Factors**

Failure to identify an extraordinary and compelling reason for compassionate release alone precludes relief. *See, e.g., United States v. Sosonko*, ELH-15-0261, WL 3618670, at *17 (D. Md. Aug. 1, 2024) (declining to consider § 3553(a) factors because defendant failed to identify extraordinary and compelling reasons for relief). Even if Mr. Gilreath had presented reasons

---

[11] In his Motion for Compassionate Release, Mr. Gilreath offers evidence of his rehabilitation through his completion of many educational, therapeutic, and rehabilitative courses, and his designation as low risk for recidivism. (ECF Nos. 44 at 25–26, 44-2 at 2, 44-4 at 2, 44-7 at 2, 54 at 1, 54-1 at 1–7.)  He also cites seven letters from BOP staff attesting to his exemplary conduct while incarcerated.  (ECF No. 63-1 at 1–2.)

meriting relief, however, the sentencing factors set out in 18 U.S.C. § 3553(a) would make relief inappropriate in this case.

If a district court finds the existence of extraordinary and compelling reasons to grant relief, it must determine whether any relevant sentencing factors in 18 U.S.C. § 3553(a) also support relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

Mr. Gilreath's statements about his childhood are a mitigating factor under § 3553(a)(1). *See, e.g.*, *United States v. Harris*, SAG-05-0061, 2026 WL 318977, at *4 (D. Md. Feb. 6, 2026). He explains in his Motion that his father was abusive toward him and his other family members. (ECF No. 44 *SEALED* at 6.) Additionally, he states that his childhood home was frequently the target of drive-by shootings and vandalism. (*Id.*) While these circumstances are mitigating, a traumatic childhood alone is insufficient to warrant compassionate release. *See, e.g.*, *Harris*, 2026 WL 318977, at *4. Mr. Gilreath's rehabilitation efforts while imprisoned certainly weigh in his favor. *See, e.g.*, *United States v. Martin*, RDB-04-0029, 2021 WL 3172278, at *3 (D. Md. July 27, 2021) (finding the defendant's rehabilitative efforts, including his participation in both educational and therapeutic courses, to weigh in favor of relief); *United States v. Cole*, No. ELH-18-0167, 2024 WL 3729133, at *1, 19 (D. Md. Aug. 7, 2024) (internal citation omitted).

The remaining § 3553(a) factors, however, disfavor relief in this case. First, the nature and circumstances of Mr. Gilreath's offense weigh strongly against release. Quite simply, this was an armed robbery of a bank involving stolen guns and at least one stolen vehicle. Mr. Gilreath and his co-conspirator, Mr. Williams, committed this crime after breaking out of the Clayton County, Georgia, jail while awaiting trial in a state murder and robbery case. There can be no question as to the seriousness of the offenses at issue here.

Additionally, the need to deter recidivism disfavors relief. Under this factor, a court may place significant weight on criminal history, especially when there is a heightened concern of recidivism due to numerous prior convictions. *See United States v. Davis*, 130 F.4th 114, 126–28 (4th Cir. 2025) (relying significantly on the defendant's extensive criminal history to justify sentence where he had repeated incarceration and gang affiliations); *United States v. Morsley*, RDB-08-401, 2022 WL 1062020, at *4 (D. Md. Apr. 8, 2022) (considering the defendant's lengthy criminal history as part of the § 3553 analysis to weigh against relief). Mr. Gilreath was found guilty by a jury of the Northern District of Georgia of armed bank robbery and kidnapping, crimes for which he received a sentence of 360-months imprisonment. Additionally, Mr. Gilreath admitted to escaping from the Clayton County Jail and then robbing a sporting goods store in Virginia for guns and ammunition. Finally, the facts of this case reflect that he committed his robbery in Baltimore County, in part, by using at least one stolen vehicle. The nature and circumstances of the offense and the need to deter recidivism each disfavor relief. On balance, therefore, the § 3553(a) factors weigh against relief in this case. For these reasons, Mr. Gilreath's Motion for Compassionate Release (ECF Nos. 44 *SEALED*, 53 *SEALED*, 54 *SEALED*) is DENIED.

## II.    Amendment 742 Motion

In his next motion, which he filed pro se, Mr. Gilreath seeks a one-point reduction in his criminal history score pursuant to 18 U.S.C. § 3582(c)(2) and United States Sentencing Guideline Amendment 742. (ECF No. 57.) Under § 3582(c)(2), a defendant may be eligible for relief if an amendment to the Sentencing Guidelines has been made retroactively applicable. *Dillon v. United States*, 560 U.S. 817, 826 (2010). Amendment 742, which took effect on November 1, 2010, eliminated "recency points" from federal criminal history calculations in U.S.S.G. § 4A1.1(e). The Sentencing Commission did not make Amendment 742 retroactive. *United States v. Brooks*, 788 F. App'x 213, 213 (4th Cir. 2019) (noting that Amendment 742 is not retroactive). The Commission's determinations as to retroactivity are "binding." *Dillon*, 560 U.S. at 830. Accordingly, Mr. Gilreath, who was sentenced in this Court on June 28, 2005, is not entitled to a reduction in criminal history score pursuant to Amendment 742. His Amendment 742 Motion (ECF No. 57) is DENIED.

## III.    Amendment 821 Motion

Mr. Gilreath's third and final motion pending before the Court is his request for a reduction in his criminal history score pursuant to 18 U.S.C. § 3582(c)(2), and Amendment 821 to the United States Sentencing Guidelines. (ECF Nos. 57, 64.) As to this Motion, Mr. Gilreath's filings have been supplemented by counsel from the Office of the Federal Public Defender for the District of Maryland. *See* (ECF No. 64).

As noted above, a defendant may be eligible for relief under § 3582(c)(2) if an amendment to the Sentencing Guidelines has been made retroactively applicable. *Dillon*, 560 U.S. at 826. Amendment 821 has been made retroactive. *See* U.S.S.G. § 1B1.10(d); *United States*

*v. Barrett*, 133 F.4th 280, 281 (4th Cir. 2025). Amendment 821 is a multi-part amendment. As relevant here, Part A limits the criminal history impact of "status points"—that is, criminal history points assigned to defendants for committing an offense while under a criminal justice sentence—on a defendant's criminal history calculation. For defendants sentenced before the amendment, Part A instructs courts: (1) to remove one status point for individuals with seven or more criminal history points and (2) to eliminate status points for those with six or less criminal history points. *See* U.S.S.G. § 4A1.1(e).

Nevertheless, § 1B1.10(a)(2) states that "[a] reduction in [a] defendant's term of imprisonment . . . is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [the amendment in question] does not have the effect of lowering the defendant's applicable guideline range." In their supplement (ECF No. 64) to his Motion (ECF No. 57), counsel for Mr. Gilreath acknowledges that he is not entitled to a sentence reduction based on Amendment 821 because lowering his criminal history score by one point—from twelve points to eleven—would not change his applicable guideline range. (ECF No. 64 at 2.) The Government concurs. (ECF No. 67 at 19.) Quite simply, his sentence of 144 months in this Court was well below the advisory guideline range. Accordingly, Mr. Gilreath's Amendment 821 Motion (ECF Nos. 57, 64) is DENIED.

Finally, although Mr. Gilreath concedes that he is "eligible to seek a reduced sentence under § 3582(c)(2)," he nevertheless seeks an order from this Court directing the Bureau of Prisons to adjust Mr. Gilreath's criminal history score to reflect that he has a total of eleven points instead of twelve. (ECF No. 64 at 2–3.) He seeks this relief for purposes related to his status as an incarcerated individual. (*Id.* at 2.) Specifically, he asserts that his criminal history

18

score affects how the Bureau of Prisons assigns his "custody status" and his "PATTERN score,"[12] "determine[s] his eligibility to participate in pre-release programming," and "determine[s] whether and when [he] may apply First Step Act credits toward pre-release cudstody." (*Id.* at 2.) In Opposition (ECF No. 67), the Government states that this Court lacks jurisdiction to issue such an order. (*Id.* at 22–26.)

As numerous courts in this Circuit have concluded, such determinations as PATTERN scores and First Step Act credits belong solely to the Bureau of Prisons and are not reviewable in this Court. *See Bennett v. Warden, FCI Beckley*, No. 23-cv-00477, 2024 WL 3433952, at *4 (S.D.W. Va. June 18, 2024) (collecting cases); *Hicks v. Heckard*, 23-CV-00581, 2024 WL 833190, at *6 (S.D.W. Va. Feb. 1, 2024), *report and recommendation adopted*, 23-CV-00581, 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024); *Felton v. Janson*, 23-CV-04657-BHH-MGB, 2024 WL 4186071, at *1 (D.S.C. May 15, 2024), *report and recommendation adopted*, 23-CV-4657-BHH, 2024 WL 3982834 (D.S.C. Aug. 29, 2024). Accordingly, Mr. Gilreath's request for alternative relief (ECF No. 64) is also denied.

---

[12] A "PATTERN score" refers to the Bureau of Prison's tool for assessing inmate risk. *See PATTERN Risk Assessment*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/fsa/pattern.jsp (last accessed May 11, 2026). The term stands for "Prisoner Assessment Tool Targeting Estimated Risk and Needs." *Id.*

## CONCLUSION

For the reasons stated above, it is this 14th day of May, 2026, hereby ORDERED that:

1.  Mr. Gilreath's pro se Motion for Compassionate Release (ECF Nos. 44 *SEALED*, 53 *SEALED*, 54 *SEALED*) is DENIED;

2.  Mr. Gilreath's pro se Amendment 742 Motion (ECF No. 57) is DENIED;

3.  Mr. Gilreath's Amendment 821 Motion (ECF Nos. 57, 64) is DENIED; and

4.  Copies of this Order and accompanying Memorandum Opinion shall be sent to Mr. Gilreath and counsel of record.


                                        _____/s/_____
                                        Richard D. Bennett
                                        United States Senior District Judge

20